**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-24882-CIV-ALTONAGA/Reid**

**YURISBEY DIAZ**,

Petitioner,

v.

**MARKWAYNE MULLIN**, *et al.*,

Respondents.
_________________________________/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner, Yurisbey Diaz's Amended Petition for Writ of Habeas Corpus [ECF No. 5], filed on July 23, 2026. Petitioner challenges his detention in Respondents' custody. (*See generally id.*). Respondents filed a Response [ECF No. 7]; to which Petitioner filed a Reply [ECF No. 8]. The Court has reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is denied.

## I. BACKGROUND

Petitioner is a Cuban national who entered the United States in 1996 and became a permanent resident in 1998. (*See* Am. Pet. ¶ 16; Resp. 1 (citations omitted)).[1, 2] Petitioner was convicted of burglary and theft in 1999, and of the same charges again in 2002. (*See id.* 2 (citations omitted)). In February 2003, an immigration judge ("IJ") entered an order of removal against Petitioner, and Petitioner was placed in immigration detention. (*See id.* (citation omitted); *id.*, Ex. E, Detention History [ECF No. 7-5] 2). In May 2003, Petitioner was released on an Order of

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] Respondents state Petitioner entered the country in late 1995. (*See* Resp. 1 (citation omitted)).

Supervision ("OSUP"). (*See* Resp. 2 (citing Detention History)). Petitioner went on to commit burglary, battery, and obstruction of justice and was convicted of these crimes in 2004. (*See id.* (citation omitted)).

On July 22, 2025, during a routine appointment, Immigrations & Customs Enforcement ("ICE") revoked Petitioner's OSUP and detained him. (*See* Am. Pet. ¶ 25). The same day, ICE issued him a Notice of Revocation of Release ("Notice"), stating ICE has "determined that [Petitioner could] be expeditiously removed from the United States," and they were detaining him under 8 C.F.R. section 241.4. (Resp., Ex. F, Not. of Revocation of Release [ECF No. 7-6] 1 (alteration added)). Petitioner states he "did not receive an interview on that date or subsequently" (Am. Pet. ¶ 25), and that he has not had "an opportunity to have his custody reviewed in a bond hearing" (*id.* ¶ 27).

On July 24, 2025, Petitioner moved to reopen his removal proceedings; and on June 2, 2026, the Board of Immigration Appeals ("BIA") affirmed the IJ's denial of the motion to reopen. (*See* Resp. 3 (citations omitted)). On July 28, 2026, ICE served Petitioner with a Notice of Removal to Mexico, which he refused to sign. (*See id.* (citation omitted)). The same day, ICE "attempted to conduct an informal interview, . . . which Petitioner refused." (*Id.* (alteration added; citation omitted)).

In the Amended Petition, Petitioner asserts three claims for relief. (*See generally* Am. Pet.). In Counts I and II, Petitioner asserts Respondents have violated his substantive and procedural due process rights under the Fifth Amendment to the U.S. Constitution, due to the revocation of his OSUP, the reasons therefor, and the lack of process afforded to him. (*See id.* ¶¶ 39–50). In Count III, Petitioner contends his 13-month detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Am. Pet. ¶¶ 51–59).

## II. LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may issue to a petitioner who demonstrates he is detained in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas*, 533 U.S. at 687.

## III. DISCUSSION

The Court addresses the parties' contentions with respect to each claim in turn.

***Count I.*** In Count I, it appears the Petition asserts the revocation of Petitioner's OSUP violated his substantive due process rights because (1) no change in circumstances since ICE granted Petitioner's OSUP warranted its revocation and (2) Petitioner's detention does not help prevent danger to the community or flight before removal. (*See* Am. Pet. ¶¶ 42–43; *see also id.* ¶¶ 39–41).

Petitioner offers no authority indicating that the points he raises mean a substantive due process violation has occurred. (*See* Reply 2–9 (seeming only to present arguments addressing Counts II and III)). Indeed, as stated in the Notice that ICE issued Petitioner the day it detained him, Petitioner's detention is authorized under 8 C.F.R. section 241.4. (*See* Not. of Revocation of Release 1). That section "authorizes revocation 'to enforce a removal order'" — the stated purpose of the Notice. *Samhan v. Noem*, No. 25-cv-25618, 2026 WL 911290, at *4 (S.D. Fla. Apr. 2, 2026); (*see also* Not. of Revocation of Release 1). Petitioner "has not cited any controlling authority requiring specific findings of flight risk or danger to the community when revoking an OSUP to enforce a removal order under [section] 241.4[]." *Id.* (alterations added; footnote call

number omitted); *see also id.* (rejecting the petitioner's argument that "his substantive Due Process rights under the Fifth Amendment were violated because [the r]espondents had no legitimate, non-punitive objective in revoking [the p]etitioner's order of supervision" (alterations added; quotation marks and citation omitted)); (*see also* Am. Pet.; Reply).[3]

Thus, Petitioner fails to show that the issues he identifies with the revocation of his OSUP violated his substantive due process rights. The claim in Count I is denied.

***Count II.*** In Count II, Petitioner contends the process by which Respondents revoked his OSUP violated his procedural due process rights. (*See* Am. Pet. ¶¶ 44–50). Petitioner bases this claim on Respondents' failure to notify him of the revocation of his OSUP and give him an opportunity to contest it. (*See id.* ¶ 47 (noting Respondents' failure "to give Petitioner timely notice of the revocation of his OSUP"); *see also id.* ¶¶ 25, 50; Reply 6 (asserting "ICE failed to provide Petitioner with a meaningful opportunity to contest the revocation of his OSUP through notice and an informal interview")).[4] In his Reply, Petitioner asserts Respondents committed regulatory violations that constituted deprivations of due process. (*See id.* 6–9).

Petitioner fails to identify any procedural violation that could form the basis of a procedural due process claim. Petitioner cites 8 C.F.R. sections 241.4 and 241.13. (*See id.* 6). As noted, section 241.13 does not apply here. Under 8 C.F.R. section 241.4(*l*), when an alien's OSUP is

---

[3] The Notice also cites 8 C.F.R. section 241.13 (*see* Not. of Revocation of Release 1), but that section does not apply here, as it pertains to an alien's prolonged detention "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future[,]" 8 C.F.R. § 241.13(a) (alteration added). As stated in the discussion regarding Count III below, Petitioner fails to make that showing.

[4] In the Petition, Petitioner also refers on several occasions to Respondents' failure to provide him a bond hearing. (*See, e.g.*, Am. Pet. ¶¶ 1, 27, 50; *id.* 15). Unlike his contentions regarding notice and an informal interview, Petitioner supplies no basis in regulation, law, or other authority for his entitlement to a bond hearing. (*See generally id.*; Reply). Thus, the Court only assesses whether Petitioner received the other forms of process he contends he was due.

revoked, the alien is entitled to notice of the revocation and a prompt informal interview regarding the reason therefor. *See id.*; *Banega v. Warden of Soft Side S. Facility*, No. 25-cv-1152, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) (section (*l*)'s procedural requirements apply whether an OSUP is revoked under section 241.4(*l*)(1) or (*l*)(2) (citations omitted)). Petitioner fails to establish that Respondents violated either requirement to deprive him of due process.

As to the notice requirement, Petitioner acknowledges he was issued the Notice the day his OSUP was revoked. (*See* Reply 7 (citation omitted)). He nevertheless contests two aspects of the Notice. First, he asserts the wrong official issued the Notice, because only a "district director" or a "field office director" can revoke an alien's OSUP (*id.* 6 (quotation marks omitted); *see also id.* 7), and the Notice was signed by an individual who listed him or herself as signing "for" an "FOD" (Not. of Revocation of Release 1).

The Court disagrees with Petitioner's reading of the regulation. Section 241.4(*l*)(1)'s notice requirement stands separately from section 241.4(*l*)(2)'s reference to the district director's revocation of an alien's release. *See* 8 C.F.R. § 241.4(*l*)(1)–(2). The regulation does not say that the district director must be the one to provide the notice, let alone that a district director must sign the letter providing that notice. *See id.* Given the lack of support in the regulation's plain text for the reading Petitioner advances, the Court is unpersuaded by the one out-of-Circuit case Petitioner offers for his position on this point. (*See* Reply 7 (citing *Ceesay v. Kurzdorfer*, No. 25-cv-267, 2025 WL 1284720, at *16–17 (W.D.N.Y. May 2, 2025))).

Second, Petitioner explains that the Notice "does not identify any specific changed circumstances" justifying revocation. (*Id.* 8 (citations omitted)). Again, this is not what section 241.4(*l*) requires. Section 241.4(*l*) states release may be revoked in the exercise of discretion when, "in the opinion of the revoking official[,]" among other reasons, "[i]t is appropriate to

enforce a removal order[.]" 8 C.F.R. section 241.4(*l*)(2) (alterations added). The Notice stated that ICE had "determined that [Petitioner could] be expeditiously removed from the United States pursuant to the outstanding order of removal against" him. (Not. of Revocation of Release 1 (alteration added)). The Notice did not fail to comply with section 241.4(*l*)'s notice requirement because it lacked a discussion of changed circumstances justifying the revocation. *See Samhan*, 2026 WL 911290, at *4.

As to the interview requirement, Respondents note they offered Petitioner an interview on July 28, 2026, which Petitioner refused. (*See* Resp. 3 (citation omitted)). Respondents do not dispute that Petitioner was due the process — an informal interview — described in 8 C.F.R. section 241.4(*l*)(1), or that he did not receive it promptly upon his July 2025 detention. (*See generally* Resp.). For his part, Petitioner does not contest that he was offered an informal interview in July 2026 or that the interview would have constituted compliance with section 241.4(*l*)(1)'s interview requirement had it taken place at the appropriate time. (*See* Reply 5–9). Thus, while Respondents provided the process due Petitioner under section 241.4(*l*)(1) well after the time contemplated in the regulation, Petitioner received the process to which he is entitled.

The ordinary remedy for a denial of due process is "only . . . the grant of the procedures due." *Ray v. Foltz*, 370 F.3d 1079, 1085 n.8 (11th Cir. 2004) (alteration added; citation omitted); *see also Ron Grp., LLC v. Azar*, 574 F. Supp. 3d 1094, 1107 (M.D. Ala. Nov. 29, 2021) ("The remedy for a violation of due process is process."). Because the claim in Count II is predicated on Respondents' failure to provide Petitioner process that Respondents have now given, Count II is denied. *Cf. Van v. Oddo*, No. 25-cv-00322, 2025 WL 3492736, at *4 (W.D. Pa. Dec. 5, 2025) (petitioner had "not shown that the alleged violations . . . would independently entitle [petitioner] to a grant of habeas relief in the form of release from detention" (alterations added; citation

omitted)); *see also Alfoqahaa v. Mullin*, No. 26-cv-22719, May 20, 2026 Order [ECF No. 10] 12 (S.D. Fla. 2026).[5]

***Count III.*** In Count III, Petitioner asserts that his approximately 13-month detention violates 8 U.S.C. section 1231, as interpreted in *Zadvydas*, because his removal is not significantly likely in the reasonably foreseeable future. (*See* Am. Pet. ¶¶ 51–59; *see also id.* ¶¶ 31–38).

Petitioner is subject to a final order of removal. (*See* Am. Pet. ¶ 2; Resp. 2–3). Under the Immigration and Nationality Act, ICE is required to remove an alien subject to a final order of removal within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Certain aliens "may be detained beyond the removal period[,]" *id.* § 1231(a)(6) (alteration added); but under *Zadvydas*, after six months, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute[,]" 533 U.S. at 699 (alterations added; citation omitted).

Put differently, detention for up to six months is presumptively reasonable, while an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. "Therefore, in order to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alteration added). The Government must then "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

[5] That Petitioner refused the informal interview Respondents offered does not alter this conclusion. *Cf. McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) ("[P]rocedural due process violations do not become complete unless and until the state refuses to provide due process." (alteration added; quotation marks and citation omitted)); *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, No. 16-cv-80655, 2017 WL 681977, at *6 (S.D. Fla. Feb. 21, 2017) (noting the court's conclusion that the "[p]laintiff's claim for denial of procedural due process failed as a matter of law because [p]laintiff was never denied procedural due process[ — ]he simply did not elect to avail himself of procedural due process" (alterations added; citation omitted)).

Petitioner fails to provide evidence that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner notes that neither Cuba nor Mexico has issued him travel documents. (*See* Am. Pet. ¶¶ 52, 58). That appears to be the entire basis of his position that his removal is unlikely in the reasonably foreseeable future, as in the rest of the portions of the Petition and Reply devoted to Count III, Petitioner focuses on other matters such as his community ties, Respondents' repeated renewals of his OSUP, the effect of his BIA appeal on Count III, and perceived deficiencies in Respondents' showing. (*See id.* ¶¶ 16–27, 31–38, 51–59; Reply 2–5).

"District courts recognize[] that a delay in the issuance of a travel document does not, without more, establish that [a p]etitioner's removal will not occur in the reasonably foreseeable future even when detention continues past the 180 day" mark. *Brown v. United States Att'y Gen.*, No. 20-20055-cv, 2020 WL 13548089, at *4 (S.D. Fla. Jan. 31, 2020) (alterations added; collecting cases); *see also, e.g.*, *Gueye v. Sessions*, No. 17-62232-Civ, 2018 WL 11447946, at *4 (S.D. Fla. Jan. 24, 2018) (petitioner fails to show his removal is not reasonably foreseeable where the "consulate of Senegal has not refused to issue a travel document for [p]etitioner or denied ICE's request for a travel document" (alteration added; citation omitted)).

Some courts recognize that an alien detainee's removal is not reasonably foreseeable if the Government's requests for travel documents are rejected and another country will not likely accept him, *see, e.g.*, *Joseph v. Mukasey*, No. 08-cv-389, 2009 WL 331558, at *4 (N.D. Fla. Feb. 20, 2009) (granting petition where The "Bahamas refused to issue a travel document for" petitioner, and there was no indication respondents could remove petitioner to Haiti, a potential alternative, in the reasonably foreseeable future); *Abuel-Hawa v. Mullin*, No. 26-22668-Civ, May 11, 2026 Order [ECF No. 14] 4–6 (S.D. Fla. 2026) (granting petition where Jordanian and Israeli consulates rejected Palestinian petitioner's applications for travel documents); especially if the requests for

travel documents drag on for years and are repeatedly rejected, *see, e.g.*, *Zadvydas*, 533 U.S. at 684 (removal not reasonably foreseeable where three countries rejected Government's requests to remove petitioner over four years); *Drummond v. Lynch*, No. 15-cv-560, 2016 WL 4154925, at *4 (N.D. Fla. June 27, 2016) (removal not reasonably foreseeable where travel document request pending for two years and embassy raised concerns to U.S. Government about repatriating alien).

Petitioner's submissions do not present such concerns. Petitioner cites no rejected travel document application, no communication from foreign authorities calling into question Petitioner's removal, and no other facts indicating Petitioner cannot be removed to Cuba or Mexico. (*See generally* Am. Pet.; Reply). That Petitioner does not yet have travel documents, and that Respondents renewed his OSUP for years before his detention, do not suffice to carry Petitioner's burden under *Zadvydas*. *See Akinwale*, 287 F.3d at 1052 (alien "must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). The claim in Count III is due to be denied.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner, Yurisbey Diaz's Amended Petition for Writ of Habeas Corpus **[ECF No. 5]** is **DENIED**. Final judgment will issue by separate order.

**DONE AND ORDERED** in Miami, Florida, this 27th day of August, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record